990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Veronica Burns LUCAS, et al., Appellants,
v.
UNITED STATES ARMY CORPS OF ENGINEERS.
 No. 91-5396.
 United States Court of Appeals, District of Columbia Circuit.
 March 29, 1993.
 
 Before: SILBERMAN, WILLIAMS, and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Appellants, architects who entered the winning design for the Korean War Memorial in a competition sponsored by the Korean War Veterans Memorial Advisory Board, challenged the Board's decisions altering their design. In the district court, appellants argued that by modifying the design the Board exceeded its statutory authority and arbitrarily and capriciously violated the rules it had issued governing the design competition. The district court granted the appellees' motion for summary judgment. We affirm.
 
 
 5
 In 1986, Congress established the Korean War Veterans Advisory Board to oversee construction of a Korean War Memorial. See Pub.L. No. 99-572, 100 Stat. 3226 (1986). Congress charged the Board with "recommending the site and selecting the design for the memorial, subject to the approval of the American Battle Monuments Commission [ABMC], and in accordance with the [the National Capital Memorials and Commemorative Works Act]." Id. § 2(b). The Commemorative Works Act requires review and approval of the monument site and of the design by the Commission of Fine Arts, the National Capital Planning Commission, and the National Capital Memorial Commission (collectively, the "reviewing commissions"). See 40 U.S.C. § 1008(a) (1988).
 
 
 6
 In conjunction with the ABMC and the Army Corps of Engineers, the Board set up a competition in which the Board, acting as a jury, would select a winning design for the memorial. That design would be implemented by a firm to be retained by the Board and the ABMC, subject, of course, to approval by the reviewing commissions. The rules stated that it was "anticipated" that the winning architects would be retained as consultants by the implementing architects and provided that in the event the first place design could not be modified sufficiently to obtain approval by the reviewing commissions, the second place design would be constructed instead.
 
 
 7
 After appellants won the competition, the Board and the ABMC began to make changes in their design, some based on specific comments of the reviewing commissions and some not. Appellants filed suit in the district court to challenge the agencies' actions, and the district court granted appellees' motion for summary judgment. We review the grant of summary judgment de novo. See Elcon Enters., Inc. v. WMATA, 977 F.2d 1472, 1478 (D.C.Cir.1992). Appellants contend that by altering their design, the Board exceeded its authority under the statute to "select" a design and arbitrarily and capriciously violated the rules of the competition, which, appellants claim, promised competitors that the winning design would be modified only as needed to meet the approval of the reviewing commissions. We find no merit in either contention.
 
 
 8
 According to appellants, the authority to "select" a design denotes a carefully circumscribed power that does not include authority to "create" or "develop" a design. Although appellants agree that the Board and ABMC could modify their design to meet the approval of the reviewing commissions, they argue that by making changes not required by the commissions, the Board began to actually design the memorial and thus assumed a role that was not permitted by the statute. Under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), it is well established that in evaluating an agency's construction of a statute that it administers a reviewing court looks first to see whether Congress has "directly spoken to the precise question at issue." Id. at 842. If Congress has addressed the issue, the inquiry is at an end, and Congress' intent controls. If the statute is silent or ambiguous, however, the court must consider whether the agency has provided a permissible interpretation of the statute, that is, an interpretation that is "reasonable, consistent with statutory purpose, and not in conflict with the statute's plain language." Coal Employment Project v. Dole, 889 F.2d 1127, 1131 (D.C.Cir.1989).
 
 
 9
 We agree with the district court that the statute here was ambiguous. In charging the Board with "selecting the design" for the memorial, Congress did not indicate whether it intended to limit the Board merely to choosing from among options presented to it or to allow the Board a broader role in shaping the development of a final design. Under the second step of Chevron, we think that the Board's construction is permissible. Neither the statute nor the legislative history suggested the narrow interpretation of "select" advocated by appellants. Indeed, nothing in the statute required the Board to hold a competition rather than merely developing a design itself. And it hardly seems inconsistent with the purposes of the statute (to establish a memorial to honor Korean War veterans) to allow a board composed of Korean War veterans some influence over the design of the memorial.
 
 
 10
 The rules for the competition do not provide the restrictions appellants seek either. According to appellants, the rule allowing the winners a consulting role should be understood essentially to guarantee the winners the ability to protect the integrity of their design. And, in appellants' view, the contingency provision for the second place design to be constructed if the first design were not approved implied that the design would be modified only to meet the requirements of the reviewing commissions, whose consideration is guided by specific statutory language in the Commemorative Works Act.[1] See 40 U.S.C. § 1007(b) (stating that the commissions shall be guided by specified criteria, including the compatibility of the memorial with the climate and existing public uses of the surrounding area).
 
 
 11
 Appellants read too much into the rules. Rather than guaranteeing the winners a role as consultants, the rules merely indicate that it is "anticipated" that the winners will be retained in that capacity. Far from giving the winners any right to protect the "integrity of their design," the rules state only that as consultants they will have "an opportunity to review and comment on the development" of the design. Nothing in the rules suggests that the modifications implicit in this further "development" of the design will be limited to changes suggested by the reviewing commissions. In fact, the rules expressly state that ownership of the winning design will pass to the ABMC and indicate that "[i]f a feature selected from any design other than a cash payment design is used in the final design of the Memorial, the author(s) of that feature will receive appropriate compensation." These provisions suggest that the Board and ABMC may engage in some picking and choosing to combine elements of different designs and do not leave the final results within the control of the winning designers.
 
 
 12
 In short, nothing in the record suggests that the Board and the ABMC violated any restrictions imposed by the statute or by their own design competition rules. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 In a separate proceeding in the Claims Court, appellants sued the federal defendants for breach of contract. The Claims Court determined that, although the competition rules did form a contract, any damages for breach were speculative, and thus the court declined to determine whether the contract had been breached. See Lucas v. United States, No. 91-42C, slip op. (Cl.Ct. Feb. 14, 1992). That appellants had a contractual claim does not necessarily mean that they cannot state a cause of action under the APA in this court. If appellants' claim were in essence a contractual claim and involved more than $10,000 in damages, the Tucker Act would provide the sole waiver of sovereign immunity on which appellants could rely and would vest exclusive jurisdiction in the Claims Court. See 28 U.S.C. § 1491(a)(1) (1988). Although in most cases a breach of contract cannot simply be recast as arbitrary and capricious action to state a claim under the APA, see International Eng'g Co., Div. of A-T-O, Inc. v. Richardson, 512 F.2d 573, 578-80 (D.C.Cir.1975), we do not think that this case presents an example of an essentially contractual claim being disguised to obtain jurisdiction in this court. While the competition rules may have created a contractual relationship, they were also general procedural rules regulating the conduct of these agencies, and thus we think a separate claim under the APA could be maintained. See Megapulse, Inc. v. Lewis, 672 F.2d 959, 967-71 (D.C.Cir.1982); cf. Sharp v. Weinberger, 798 F.2d 1521, 1523 (D.C.Cir.1986)